IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELODY SOUTHARD          :
                         :
                         :
    v.                   :     Civil No. CCB-14-323
                         :
                         :
WICOMICO COUNTY          :
BOARD OF EDUCATION       :

## MEMORANDUM

Melody Southard occupied two roles at Pemberton Middle School: she served as a teacher, having been employed by the Wicomico Board of Education ("the Board") since 2008, and she was the parent of a disabled student enrolled at Pemberton. She alleges that the Board reprimanded her, transferred her to a different school, and took a series of other adverse employment actions against her in retaliation for claiming her and her son's entitlements under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the Rehabilitation Act, 29 U.S.C. § 790–794f. The Board moved to dismiss those allegations under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Southard failed to exhaust her administrative remedies under both the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482, and the ADA. This court previously granted that motion, after Southard apparently failed to oppose it. She subsequently moved for reconsideration. For the reasons explained below, her motion for reconsideration will be granted and this court's previous order vacated. As to the Board's motion to dismiss, it will be granted as to Southard's ADA claims and granted in part as to Southard's Rehabilitation Act claims.

1

## BACKGROUND

Southard alleges the following facts: As noted, the Board has employed Southard as a teacher since 2008. (Compl. ¶ 3, ECF No. 1.) Her son had always attended the school at which Southard worked. (Compl. ¶ 5.) That child was the subject of what Southard's complaint describes as an "IEP," (*see, e.g.*, Compl. ¶¶ 9, 23–24), presumably in reference to the "individualized education program" that the IDEA and its implementing statute in Maryland require schools to formulate for covered students, *see, e.g.*, 20 U.S.C. § 1414(d). In January 2011, Pemberton's recently appointed principal determined that the school would no longer administer the medically recommended, gluten-free diet included in the child's IEP. (Compl. ¶ 9; *see also* Compl. 7.) Southard objected and, in the months that followed, pressed school officials—via letter, email, and in-person meetings—to document and evaluate her son's needs. (Compl. ¶¶ 11–21, 25–29, 32–37.)

Southard alleges that Pemberton's principal initiated a campaign of harassment against her, belittling her ignorance about "the special education process" in front of her peers and allowing the father of her child to harass her and other members of the school's staff at their workplace. (Compl. ¶ 60; *see also* Compl. ¶¶ 8, 22–23.) In June 2011, she received notice of a meeting with Human Resources to discuss matters concerning special education. (Compl. ¶¶ 38–39.) At that meeting, which Southard attended in the company of her union representative, she was warned of "borderline insubordinat[ion]" in failing to accept the Pemberton principal's position with respect to the proper treatment of her son. (Compl. ¶ 41.) Two days later, Southard received a letter reprimanding her for that conduct. (Compl. ¶ 48.) She was also transferred without cause to a different school. (Compl. ¶ 48.) After the reprimand and transfer,

Southard continued to seek information related to the school's capacity to accommodate her son's needs. (Compl. ¶ 50–54.) And she grieved her reprimand, which a Board employee removed from her personnel file, simultaneously warning Southard that continued discussion with her son's IEP team could result in further discipline. (Compl. ¶¶ 57–58.)

Following Southard's transfer, the alleged retaliation continued. At her new school, Southard claims, among other things, that she received critical "observation evaluations" and "inaccurate and degrading evaluations." (Compl. ¶ 61.) She was subsequently transferred to yet another school, where she was "subjected to constant verbal and written reprimands addressing a variety of complaints from allegedly insufficient lesson plans to having difficulty staying awake during a meeting to how the classroom is organized," (Compl. ¶ 62), as well as unusually close supervision of her classroom performance and attendance. (Compl. ¶¶ 69–76.) At least during the period she worked at this third school, her advocacy on behalf of her son continued. (Compl. ¶ 64–67.) Since November 2013, Southard has been on FMLA leave from her teaching position at the school. (Compl. ¶ 78.)

At some time not specified in the complaint, Southard removed her child from the Board's schools. (*See* Compl. ¶ 88.) The Board allegedly interfered with the evaluation of that child's needs at his new school. (Compl. ¶ 88.) That interference included: "(1) [The Board's Supervisor of Special Education] interfered with the IEP process at [the child's] new school district; (2) [that supervisor] participated in causing an investigation to be launched regarding [Southard's] residency; (3) using [the child's father] as [the Board's] pawn throughout [Southard's] filed due process complaint to avoid being held accountable for [the Board's] actions regarding [the child's] education and in return offering to help [the father's] custody

3

attorney in his dispute with [Southard]; (4) refusing to grant [Southard] access to portion of [the child's] education record." (Compl. ¶ 88.) Other than that single, elliptical reference to a "due process complaint," Southard's pleading contains no reference to any proceeding held before any administrative body regarding her son's education.

Southard subsequently filed this complaint and the Board, in turn, moved to dismiss it for failure to exhaust remedies under the IDEA and ADA. Southard did not oppose that motion in a timely manner and this court granted it without the benefit of Southard's briefing, highlighting Southard's failure to file any response "despite being given additional time to do so." (Order, ECF No. 13.) The same day that order issued, Southard filed a motion for reconsideration along with a memorandum in opposition to the Board's motion to dismiss, explaining that the Board's counsel had previously consented to a second extension of time for that filing, but counsel had failed to notify the court. (Mem. Reconsider, ECF No. 14.) This court formally accepted and considered Southard's opposition, explaining that it would grant the motion to reconsider if it found Southard's position meritorious. (Order, ECF No. 16.) In due course, the Board filed a reply to Southard's opposition.

## ANALYSIS

### I. Standard of Review

A motion brought under Federal Rule of Civil Procedure 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim, and a 12(b)(6) motion addresses whether [the plaintiff] has stated a cognizable claim, a challenge to the sufficiency of the complaint." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "[A] plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements . . . . [and] advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters*, 684 F.3d at 439 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 570).

Under Rule 12(b)(1), "[a] defendant may contest subject matter jurisdiction in one of two ways: by attacking the veracity of the allegations contained in the complaint or by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). Here, the Board asserts the second of these two objections, arguing that, on its face, Southard's complaint

5

offers no grounds for federal jurisdiction for want of any allegation of administrative exhaustion. Accordingly, Southard must be "afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration," meaning that "the facts in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal citation and quotation marks omitted).

Courts are split over whether a plaintiff's failure to exhaust under the IDEA constitutes a jurisdictional defect. *See, e.g.*, *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 784 (10th Cir. 2013) (describing this circuit split). The Fourth Circuit once indicated, without analysis, that the exhaustion requirement was jurisdictional. *See M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002). Since then, however, the Supreme Court has clarified the difference between jurisdictional requirements and mere claims processing provisions, leading at least one court to revise its prior conclusion that the IDEA conditioned federal jurisdiction on a litigant's exhaustion of administrative remedies, *see Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 870–71 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc), and another to reserve the question of revising its law for another day, *see Muskrat*, 715 F.3d at 784–85. The potentially jurisdictional character of the IDEA's exhaustion requirement "is not merely semantic" and sometimes carries "considerable practical importance for judges and litigants." *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011). Here, however, the question is entirely academic; the Board invokes both Rule 12(b)(1) and 12(b)(6) and, because its jurisdictional challenge is facial, the standard under the two rules is identical. *See, e.g.*, *E.L. ex rel. G.L. v. Chapel Hill-Carrboro*

*Bd. of Educ.*, 975 F. Supp. 2d 528, 533 n.5 (M.D. N.C. 2013) (highlighting the uncertain state of the jurisdictional question, but concluding that answering it was "not dispositive").

## II.  IDEA Exhaustion

### A.  Statutory Scheme

Although Southard's claims arise under the ADA and Rehabilitation Act, the Board asserts that those claims cannot proceed until she exhausts her administrative remedies under the IDEA, a separate but related statutory scheme.  The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  To that end, the statute requires state or local agencies receiving certain federal funds to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).  Those procedural safeguards include an opportunity for parents "to present a complaint with respect to any matter related to the identification, evaluation, or education placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).  A parent submitting such a complaint is entitled to "an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency . . . ." 20 U.S.C. § 1415(f)(1)(A).  A parent dissatisfied with this initial resolution of a complaint may take an administrative appeal.  *See* 20 U.S.C. § 1415(g).  In the ordinary case, it is only then, after exhausting these administrative processes, that a parent may seek judicial review of her claim. *See* 20 U.S.C. § 1415(i)(2)(A).

The IDEA is not, however, the sole federal statutory source of entitlements for disabled students and their parents.  The IDEA itself contains a "nonexclusivity provision," *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir. 1987), which "provides . . . a rule for harmonizing the IDEA with overlapping 'rights, procedures, and remedies' found in other laws," *Payne*, 653 F.3d at 872 (quoting 20 U.S.C. § 1415(l)).  In full, that "harmonizing" rule provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  The Board argues that Southard failed to satisfy this requirement.  For the reasons explained below, however, Southard's failure to exhaust her administrative remedies is partially excused by reason of futility.

### B.  The IDEA's harmonization rule

Southard's complaint presents two varieties of retaliation.  The overwhelmingly dominant strain of her complaint alleges retaliatory acts directed at her as a professional—that is, adverse employment actions.  The recessive strain of her complaint—appearing in a single paragraph that describes the Board's putative interference with her child's evaluation at his new school, (*see* Compl. ¶ 88)—alleges retaliatory acts directed at her as a parent—that is, adverse actions that impinge on parental entitlements under the IDEA.

Courts have developed at least two standards to evaluate whether a plaintiff "seek[s] relief that is also available under" the IDEA, which triggers the harmonization rule's exhaustion requirement.  20 U.S.C. § 1415(l); *see also Payne*, 653 F.3d at 874 (describing this circuit split).

The Seventh and Tenth Circuits both apply an "injury-centered" test, requiring exhaustion unless "the plaintiff has alleged injuries that cannot be redressed to any degree by the IDEA's administrative procedures and remedies." *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568 (7th Cir. 2004) (internal quotation marks omitted); *see also Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066 (10th Cir. 2002). The Ninth Circuit, by contrast, employs a "relief-centered" approach, requiring exhaustion "only in cases where the relief sought by a plaintiff in the pleadings is available under the IDEA." *Payne*, 653 F.3d at 871. There is no need to pick which of these two tests to apply here, because both yield the same answer, as explained below.

As to the Board's allegedly retaliatory interference with the IDEA evaluation process at Southard's son's new school, (*see* Compl. ¶ 88), the harmonization rule requires exhaustion. "[The] IDEA provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education." *Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 527 (4th Cir. 1998). Those protections included provisions requiring parental access to records and "participat[ion] in meetings with respect to identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1). Accordingly, an administrative officer appointed to resolve an IDEA-related dispute is empowered to determine "that a child did not receive a free appropriate public education" on the basis of "the procedural inadequacies" of the IDEA evaluation process. 20 U.S.C. § 1415(f)(3)(E)(ii). The Board's alleged interference with the evaluation of Southard's son at his new school impinged on these procedural guarantees. Under the "injury-centered" approach, then, its interference could plainly be addressed via an administrative hearing, which thus must be exhausted before seeking judicial review.

The Ninth Circuit's "relief-centered" test yields the same outcome. That test requires exhaustion

> where a plaintiff is seeking to enforce rights that arise as a result of a denial of free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a [free appropriate public education] to provide the basis of the cause of action . . . . Such claims arise under either the IDEA . . . or its substantive standards (if a [Rehabilitation Act] claim is premised on a violation of the IDEA), so the relief follows directly from the IDEA and is therefore "available under this subchapter." 20 U.S.C. § 1415(l).

*Payne*, 653 F.3d at 875. On this account, a plaintiff who "seeks damages for the school district's failure to provide procedural due process for rights conferred by the IDEA" must exhaust her administrative remedies "because the IDEA provides procedural due process rights . . . and [a plaintiff] cannot simply claim damages in place of the process available to her." *Id.* at 883. That maneuver is precisely what Southard attempts to execute here. "To establish a prima facie retaliation claim under the ADA [or Rehabilitation Act], a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012); *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (outlining the identical standard for retaliation claims under the Rehabilitation Act, which adopts the ADA's substantive provisions). Southard seeks to establish this second element—an adverse action—by proving the deprivation of procedural rights guaranteed by the IDEA, demanding compensatory damages for their denial. Even under the relief-centered test, then, Southard must resort to the administrative process before suing the Board for its alleged interference with her son's evaluation at his new school.

As to the Board's alleged adverse *employment* actions against Southard, however, the

IDEA's harmonization rule does not require exhaustion. The vast majority of Southard's complaint alleges adverse employment actions, which arise out of her status as a teacher employed by the Board. Although the putative retaliation was allegedly motivated by her exercise of a parent's rights under the IDEA, Southard's alleged injuries are professional in character; the merits of her IDEA-related dispute are irrelevant to whether she suffered professional retaliation motivated by that dispute. *See Reynolds*, 701 F.3d at 154 ("[A] plaintiff is not required to prove the conduct he opposed was actually an ADA violation."). "The nature of [Southard's] claim is not educational; no change to [her child's] IEP could remedy, even in part," the professional injuries she allegedly suffered. *McCormick*, 374 F.3d at 569. Under the injury-centered test, then, no exhaustion is required. Application of the relief-centered approach yields the same conclusion, because Southard "does not seek relief based on an IDEA right, and does not seek a remedy provided by the IDEA . . . ." *Payne*, 653 F.3d at 879. For these reasons, the IDEA's harmonization provision does not require Southard to exhaust her claims premised on the Board's alleged adverse employment actions against her.

The Board bases its argument for a contrary conclusion on a host of cases requiring plaintiffs alleging retaliation to first exhaust their IDEA administrative remedies. Those cases, however, confronted materially different factual circumstances: in each, the alleged retaliatory conduct was directed at a student's educational conditions or a student's parents' status as parents. *See, e.g.*, *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 273–75 (3d Cir. 2014); *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1155, 1157–59 (11th Cir. 2006); *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000); *Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1421 n.7, 1422 (11th Cir. 1998) (per curiam). In none of them was the alleged retaliation

directed at a parent's conditions of employment or other matters unrelated to their status as parents. Such injuries do not arise under the IDEA and are not remediable under it, obviating the harmonization provision's exhaustion requirement.

Policy confirms that Southard need not exhaust claims premised on adverse employment actions. "[A]pplication of the exhaustion doctrine is 'intensely practical,'" such that "deciding whether to waive exhaustion should be 'guided by the policies underlying the exhaustion requirement.'" *J.B . ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir. 2013) (alteration in original) (quoting *Bowen v. City of N.Y.*, 476 U.S. 467, 484 (1986)). The IDEA's "exhaustion provision is designed to 'allow[] for the exercise of discretion and educational expertise by state and local agencies, afford[] full exploration of technical educational issues, further[] development of a complete factual record, and promote[] judicial efficiency by giving . . . agencies the first opportunity to correct shortcomings in their educational programs for disabled children.'" *Payne*, 653 F.3d at 875–76 (alterations in original) (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)). Where, as here, an agency probably lacks any authority to hear a complaint, no such record can be developed. And even if a Maryland ALJ *did* exercise jurisdiction, its *educational* expertise would have no application to a case premised on *employment* actions allegedly motivated by the invocation of IDEA claims but indifferent to the merits of those claims. "In these circumstances, requiring a plaintiff to exhaust an administrative scheme would be an empty exercise in legal formalism." *Perrino v. S. Bell. Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000) (discussing the exhaustion requirement under the Employee Retirement Income Security Act).

## B. Futility Exception

In the alternative, even if the IDEA's harmonization provision *did* require her to exhaust those claims premised on adverse employment actions, the IDEA's futility exception would excuse her from doing so. "It is true that judicial review is normally not available . . . until all administrative proceedings are completed, but . . . parents may bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 326–27 (1988). That exception plainly applies where, as here, the IDEA process could provide no relief relevant to the adverse employment actions Southard alleges to have suffered.

Maryland's implementation of the IDEA administrative regime confirms that conclusion. *See Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 52 (1st Cir. 2000) (observing that a state's implementation of the IDEA may render exhaustion futile where a plaintiff's complaint lies beyond "the scope of the due process hearing). As Southard argues, that regime could not address the *substance* of her complaint.[1] She correctly points out that Maryland restricts the scope of due process hearings "to resolving the question of whether a school has properly applied the law in 'the identification, evaluation, educational placement, or the provision of free appropriate public education.'" (Southard Opp. Mot. Dismiss 10, ECF No. 17 (quoting Md. Code Ann., Educ. § 8-413(a)(3).) It does so by appointing administrative law judges ("ALJ's") empowered "to resolve a dispute over the identification, evaluation, educational placement, or the provision of free appropriate public education, in accordance with federal law." Md. Code Ann., Educ. § 8-413(a)(3); *see also id.* at § 413(d)(5). "The ALJ appointed to hear the dispute

---

[1] To the extent Southard argues that the IDEA affords only children, and not their parents, rights under the statute, she is incorrect. As noted, the IDEA specifically endows parents with certain administratively enforceable procedural protections. *See, e.g.*, *Sellers*, 141 F.3d at 527. And to the extent she seeks to excuse any failure to exhaust her claims related to the Board's alleged interference with her child's evaluation at his new school, those claims are plainly cognizable under the IDEA's administrative process, such that exhaustion was by no means futile.

may, 'after review of the education records of the child, dismiss any request for review which does not relate to' the identification, evaluation, educational placement, or the provision of free appropriate public education to the child." *John A. v. Bd. of Educ. for Howard Cnty.*, 929 A.2d 136, 142 (Md. 2007) (quoting Md. Code Ann., Educ. § 8-413).  If the ALJ hears a complaint, however, any decision must either (1) "be made on substantive grounds based on the determination of whether the child received a free appropriate public education" or (2) be premised on a "procedural inadequacies" so egregious that the child did not receive such an education.  Md. Code Ann., Educ. § 8-413(g).[2]  This language—which follows the federal statute nearly verbatim, *see* 20 U.S.C. § 1415(f)(3)(E)—indicates that the ALJ's authority is restricted to the substance of educational decisions and the procedural rules that protect those determinations.

The Maryland Court of Appeals has confirmed the limited scope of an ALJ's authority under the state statute implementing the IDEA's mandate.  *John A. v. Board of Education for Howard County* held that an ALJ's "subject matter jurisdiction" did not extend to a dispute "deal[ing] principally with medical and ethical concerns, rather than those touching on special education."  929 A.2d at 151, 153.  There, a disabled student's parents filed a due process

---

[2] The relevant statutory provision reads in full:

> (1) The decision of the administrative law judge shall be made on substantive grounds based on the determination of whether the child received a free appropriate public education.
>
> (2) In matters alleging a procedural violation, an administrative law judge may find that the child did not receive a free appropriate public education only if the procedural inadequacies:
>
>> (i) Impeded the child's right to a free appropriate public education;
>>
>> (ii) Significantly impeded the parents' opportunity to participate in the educational decision making process regarding the provision of a free appropriate public education to the parents' child; or
>>
>> (iii) Caused a deprivation of educational benefits.

Md. Code Ann., Educ. § 8-413(g).

complaint after their child's school unilaterally stopped administering certain medications allegedly necessary to reduce symptoms that would otherwise "inhibit or disable [the student] from learning in the usual educational setting." *Id.* at 143 n.14; *see also id.* at 145.  The school acted after the child's prescribing psychiatrist refused, at the parents' direction, to tell the school nurse "when the medications should be withheld based on [seemingly dangerous] symptoms noted at the time of administration." *Id.* at 144.  The Maryland Court of Appeals affirmed the ALJ's dismissal of the complaint for want of subject matter jurisdiction, reasoning the dispute "relate[d] to the ability of a child's parents to regulate communications between the school personnel designated to administer the drugs and the child's treating/prescribing psychiatrist. The IDEA does not intend to address claims such as these, even had the ALJ concluded that the administration of medication inferentially was provided for" under the child's individual education plan. *Id.* at 152.

    *John A.* was a far closer case than this one.  There, the dispute centered on procedures related to the provision of services allegedly necessary to ensure a child's access to a free appropriate public education.  Indeed, the parents' arguments were premised on the necessity to their child's education of the medication that the school unilaterally refused to continue administering.  Here, the dispute centers on the propriety of employment-related decisions allegedly provoked by the assertion of rights under the IDEA but that do not impinge on those rights.  As noted, that retaliation claim does not turn on the merits of Southard's dispute with school officials over the proper treatment of her son under the IDEA.  *See Reynolds*, 701 F.3d at 154.  If Maryland's IDEA-implementing statute precludes an ALJ from hearing even a dispute related to the provision of services that arguably *must* be provided under the IDEA, then *a*

*fortiori* it also bars a lawsuit that turns in no way on the merits of an IDEA claim. Resort to an administrative body that lacked the authority to hear Southard's complaint, let alone to remedy it, would have been an exercise in futility on which her right to judicial review does not depend.

Responding to a slightly different iteration of Southard's argument, the Board contends that Maryland's peculiar implementation of the IDEA's requirements is irrelevant. Maryland statutes expressly incorporate the IDEA's standards, the Board explains. *See, e.g.*, Md. Code Ann., Educ. § 8-407; *John A.*, 929 A.3d at 142. And, in any case, the IDEA would trump any Maryland statute inconsistent with its commands. *See, e.g.*, *Sarah M. v. Weast*, 111 F. Supp. 2d 695, 703 (D. Md. 2000) (collecting IDEA preemption cases). But the Board's conclusion does not follow from these observations, whatever their accuracy. Even if Maryland's interpretation of its statutes *were* inconsistent with the federal standards those statutes incorporate—which need not be decided here[3]—futility turns on the *actual* operation of the administrative body, not its federally *prescribed* operation. For example, "[a] plaintiff does not have to exhaust administrative remedies if she can show that the agency's adoption of an *unlawful general policy* would make resort to the agency futile . . . ." *Rose*, 214 F.3d at 210–11 (emphasis added); *accord, e.g.*, *J.B.*, 721 F.3d at 594. Thus even if Maryland courts *unlawfully* constricted the scope of the ALJ's subject matter jurisdiction, in violation of the Supremacy Clause, the futility exception would remain just as applicable.

### III. ADA Exhaustion

Apart from its IDEA argument, the Board contends that Southard has failed to allege any

---

[3] Comity and prudence confirm the propriety of refusing to pass on the Maryland Court of Appeals' construction of the subject matter jurisdiction of Maryland ALJ's. *Cf. In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 592 (4th Cir. 2006) ("[T]he ability of a state court to determine its own jurisdiction is a serious obligation, and not something that federal courts may easily take for themselves" (internal quotation marks omitted).). Neither party challenges Maryland's implementation of the IDEA here, either on the ground of inconsistency with federal law or any other basis. There is thus no need to address the matter.

exhaustion of her ADA claim, as Title I of that statute requires.  (*See* Mem. Supp. Mot. Dismiss 18–24, ECF No. 10-1.)  Southard does not object to this argument; her opposition to the Board's motion to dismiss does not mention it at all.  (*See* Opp. Mot. Dismiss, ECF No. 15.)  Southard's ADA claim is thus abandoned and will be dismissed in its entirety.  *See, e.g.*, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 783 (D. Md. 2010).

## CONCLUSION

For the reasons stated above, Southard's opposition to the Board's motion to dismiss is meritorious in part.  Her motion to reconsider, (ECF No. 14), will accordingly be granted, this court's previous order, (ECF No. 13), will be vacated, and the case will be reopened.  The Board's motion to dismiss, (ECF No. 10), will be granted as to Southard's ADA claim and granted as to her Rehabilitation Act claims premised on the Board's alleged interference with the IDEA process at Southard's son's new school, which are described in paragraph 88 of the complaint.  That motion will be denied as to Southard's remaining Rehabilitation Act claims, which are premised on retaliatory conduct directed at Southard's conditions of employment.

A separate order follows.

January 13, 2015                                        /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge